UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NANCY CALDERON AND | § | |
| PHILLIP R. CALDERON, | § | |
| | § | Cv. No. SA:12-CV-00121-DAE |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| BANK OF AMERICA N.A., | § | |
| | § | |
| Defendant. | § | |

ORDER: (1) GRANTING DEFENDANT'S MOTION TO STRIKE; (2)
DENYING PLAINTIFFS' MOTION TO STRIKE; (3) GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On April 22, 2013, the Court heard oral argument on the Motion for

Summary Judgment filed by Defendant Bank of America, N.A. ("Bank of

America") (doc. # 22).  Nathan T. Anderson, Esq., appeared on behalf of Bank of

America.  Kenneth Grubbs, Esq., and Hector Cortez, Esq., appeared on behalf of

Plaintiffs Nancy and Phillip R. Calderon ("Plaintiffs").  Also before the Court are

Bank of America's Motion to Strike Plaintiffs' Expert Witness (doc. # 34) and

Plaintiffs' Motion to Strike Defendant's Motion to Exclude Plaintiffs' Experts

(doc. # 35).  After careful consideration of the memoranda in support of and in

opposition to the Motions, and in light of the parties' arguments at the hearing, the

Court, for the reasons that follow, **GRANTS** Bank of America's Motion to Strike

(doc. # 34), **DENIES** Plaintiffs' Motion to Strike Defendant's Motion to Exclude Plaintiffs' Expert Witness (doc. # 35), and **GRANTS** Bank of America's Motion for Summary Judgment (doc. # 22).

## BACKGROUND

I.   Plaintiffs' Home-Equity Loan

        In October of 2006, Plaintiffs obtained a $415,500 home-equity loan secured by real property located at 2125 W. Gramercy Place, San Antonio, Texas. (Doc. 1-1 at 2.)  The loan was originated by America's Wholesale Lender d/b/a Countrywide Home Loans, Inc. ("Countrywide").  (Doc. # 1-1 at 2; doc. # 22 ("MSJ") ¶ 2.)  Plaintiffs executed both a promissory note and a security instrument. (Doc. # 22-1 ("Espino Decl.") Exs. A & B.)  The promissory note identified America's Wholesale Lender (d/b/a Countrywide Home Loans, Inc.) as the Lender—the holder of the Note and the entity entitled to receive payments. (Espino Decl. Ex. A ("Note") at 1.)  The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, stating that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  (Id. Ex. B ("DOT") at 2.)  The Deed of Trust further stated, "Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's

2

successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." (Id. at 3.)

On January 26, 2010, MERS assigned the Deed of Trust to "The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders [of] CWABS, Inc., Asset-backed Certificates, Series 2006-22." (Resp. Ex. 5.)  This assignment was recorded by the Bexar County Clerk's Office on June 1, 2010.  (Id. at 3.)  Ms. Calderon, in her sworn affidavit, acknowledges that "the deed of trust [was] assigned to Bank of New York Mellon." (Resp. Ex. 7 ("Calderon Decl.") at 1.)[1]  Bank of America asserts that it, by virtue of a servicing agreement with BNY, "is the mortgage servicer for The Bank of New York Mellon, FKA The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-backed Certificates, Series 2006-22." (MSJ ¶ 3; Espino Decl. Ex. D at 2; Resp. Ex. 9.)

There is no dispute that The Bank of New York Mellon ("BNY") also possesses the Note.  Counsel for Bank of America produced the original Note,

---

[1] On January 10, 2012, a few days after Plaintiffs filed their state-court petition, an agent of MERS executed an assignment within the MERS system that purported to assign the Deed of Trust to "The Bank of New York Mellon, FKA The Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-backed Certificates, Series 2006-22, c/o Bank of America, N.A."  (Espino Decl. Ex. C.) At the hearing, counsel for Bank of America explained that this latter assignment merely corrected a scrivener's error on the first assignment.

3

indorsed in blank,[2] at the hearing.  Moreover, Plaintiffs, in their Response to Bank of America's Motion for Summary Judgment, state that "[The] Bank of New York[,] not Bank of America[,] is the holder of the note."  (Resp. ¶ 10.)  As discussed in more detail below, however, Plaintiffs' counsel contended at the hearing that BNY, despite physically possessing the indorsed-in-blank Note, is not truly the Note's "holder" because the assignment of the Note was void.

II.     <u>Bank of America Initiates Foreclosure Proceedings and Plaintiffs Initiate This Suit</u>

Beginning in 2008, due to changes in their income, Plaintiffs applied to Bank of America for a number loan modifications.  (<u>See</u> Calderon Decl. at 1–2; <u>id.</u> Ex. 1 (correspondence with Bank of America dated June 17, 2010).)  Counsel for Bank of America testified at the hearing that these modifications lowered Plaintiffs' monthly payments and reduced the amount Plaintiffs owed on their mortgage by approximately $57,000.  Despite the loan modifications, however, Plaintiffs fell behind on their mortgage.  Their last payment was posted on May 20, 2011, and was credited to the payment that had been due in February 2011.  (Espino Decl. ¶ 9.)  Plaintiffs "do not dispute a default on the loan . . . ."

---

[2] Under Texas law, physical possession of a promissory note that bears a blank indorsement establishes ownership and the right to collect.  <u>See</u> Tex. Bus. & Com. Code § 3.205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

(Resp. ¶ 30.)  Plaintiffs' counsel confirmed at the hearing that Plaintiffs had not made any payments on their mortgage for "years."

On January 5, 2012, after Bank of America began procedures for foreclosure, Plaintiffs filed their Original Petition in state court seeking a temporary restraining order to prevent the foreclosure sale.  (Doc. # 1-1.)  The state-court petition sought a declaration that Bank of America had no right to foreclose because it could not prove that it was "the valid and proper assignee of the note and deed of trust."  (Id. at 5, 7.)  Plaintiffs also brought claims for fraud, violations of the UCC and the Texas Debt Collection Act, and an action to quiet title.  (Id. at 6–9.)  Finally, Plaintiffs insisted that their loan had been "made part of a pool called the CWABS Asset Backed Securities 2006-22" and that BNY, which "was named as trustee of the pool," was the holder of the Note—not Bank of America.  (Resp. ¶ 10.)  Plaintiffs sought actual and exemplary damages, damages for mental anguish, and attorney's fees.  (Id. at 9–11.)

Bank of America removed the case to this Court on February 6, 2012. (Doc. # 1.)  On May 21, 2012, Plaintiffs filed their First Amended Complaint. (Doc. # 9.)  On October 11, 2012, Bank of America filed the Motion for Summary Judgment that is now before the Court.  (Doc. # 22.)  At the time that Motion was filed, Bank of America asserted that Plaintiffs owed $546,453.05 on their loan. (MSJ ¶ 4.)

Plaintiffs filed a Response in Opposition to Bank of America's Motion on November 12, 2012.  (Doc. # 29 ("Resp.").)  In their Response, Plaintiffs indicated that they wished to pursue only their "Declaratory Judgment Claims, UCC Claims, Quiet Title Claims, Injunctive Relief and Legal Fees Claims" and that they were withdrawing "their Debt Collections Practices Act Claims, Deceptive Trade Act Claims, Common Law Fraud Claims, DTPA Mental Anguish Claims, Treble Damage Claims, [and] Punitive Damage Claims." (Resp. ¶ 35.)  Attached to the Response were a number of exhibits, including the affidavit of Ezequiel Martinez, a proposed expert witness.  (Resp. Ex. 10.)

On November 26, 2012, Bank of America filed a Reply in support of its Motion for Summary Judgment.  (Doc. # 33.)  On the same day, Bank of America moved to strike Mr. Martinez's affidavit, arguing that Mr. Martinez was not qualified to testify as an expert.  (Doc. # 34.)  On December 7, 2012, Plaintiffs filed a Motion to Strike Defendant's Motion to Exclude Plaintiff's Experts [sic] and in the Alternative Response.  (Doc. # 35.)

<u>STANDARD OF REVIEW</u>

I.      <u>Motion to Strike</u>

In the Fifth Circuit, it is well settled that "the admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial."  <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 285 (5th Cir. 2004) (quoting

6

Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir. 1995)).  Federal

Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the

material cited to support or dispute a fact cannot be presented in a form that would

be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The Advisory Committee

Notes regarding this subsection explain that "[t]he objection functions much as an

objection at trial, adjusted for the pretrial setting."  Fed. R. Civ. P. 56 advisory

committee's notes.  The burden is on the proponent to show by a preponderance of

the evidence that the material is admissible as presented or to explain the

admissible form that is anticipated.  Fed. R. Civ. P. 56 advisory committee's notes.

II.    Motion for Summary Judgment

Summary judgment is proper when the evidence shows "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 251–52 (1986).  The main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317,

323–24 (1986).

The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  Id. at 323  If the moving party

meets this burden, the non-moving party must come forward with specific facts

that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v.

Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In

deciding whether a fact issue has been created, "the court must draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th

Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

I.      The Parties' Evidentiary Objections

Evidence submitted in support of a summary judgment motion must

be admissible under the Federal Rules of Evidence.  Pegram, 361 F.3d at 285.  For

the reasons that follow, the Court finds that Plaintiffs' objections to Bank of

America's evidence are without merit but that Plaintiffs' so-called "expert"

testimony is inadmissible and will not be considered.

A.  <u>Bank of America's Motion to Strike Plaintiffs' Expert Witness</u>

Plaintiffs attached to their Response to Bank of America's Motion for Summary Judgment the affidavit of one Ezequiel Martinez.  (Resp. Ex. 10 ("Martinez Decl.").)  Plaintiffs argue that Mr. Martinez is an expert whose "testimony revolves around the simple real estate concept of 'who owns the land and who may enforce the lien against the land.'"  (Doc. # 35 ¶ 3.)  As the proponents of Martinez's testimony, Plaintiffs bear the burden of proving its admissibility by a preponderance of the evidence.  <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 459–60 (5th Cir. 2002).  According to Rule 702 of the Federal Rules of Evidence, an expert must be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  A court should not permit a witness to testify as an expert if he is not qualified to testify in a particular field or on a given subject.  <u>Wilson v. Woods</u>, 163 F.3d 935, 937 (5th Cir. 1999).  Whether an expert is qualified to testify is a question of law.  <u>Mathis</u>, 302 F.3d at 459.

According to his affidavit, Mr. Martinez was a stock and securities trader who no longer has the licenses required for those activities.  (Martinez Decl. at 3.)  He is also a real estate investor and former realtor.  (<u>Id.</u>)  Mr. Martinez is not a lawyer and professes no legal training.  He does, however, state that he has been a consultant for the Law Offices of Kenneth Grubbs since 2011 and that he has worked on over 70 cases for Mr. Grubbs.  (<u>Id.</u> at 3–4.)

9

Mr. Martinez provides the following ultimate opinions on page 21 of his affidavit: (1) that the trust involved in this case is "NOT the holder or owner of the note"; (2) that Bank of America is "not the true holder of the note"; (3) that "Stephen Porter is a robosigner" and that the assignment is therefore "fraudulent and voidable"; (4) that "Cecilla [sic] Rodriguez is a robosigner" and that the assignment is "fraudulent and voidable"; and (5) "that the chain of assignment is broken." Mr. Martinez's affidavit also contains his opinions about how federal securities laws apply to a prospectus (id. at 6); how certain assignments and endorsements of notes after a "cutoff date" are "FRAUDULENT" (id. at 8); that "in Texas, the note and the security instrument are inseparable" (id. at 9); that the Pooling and Servicing Agreement has been violated (id.); and that there is a defective assignment (id. at 12).

These are all legal conclusions and are inadmissible on multiple grounds. First, because Mr. Martinez has neither formal education in the law nor the kind of experience that might qualify him as a legal expert, he is not qualified to give legal opinions. See Fed. R. Evid. 702 (requiring an expert to be qualified by "knowledge, skill, experience, training, or education"). Second, legal opinions do not assist the trier of fact as required by Federal Rule of Evidence 702(a). See Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) (noting that an expert's legal conclusion "both invades the court's province and is irrelevant"); 32

C.J.S. Evidence § 695 ("The testimony of witnesses in general is confined to matters of fact, as distinguished from matters of law.  Thus no witness should be permitted to testify to a legal conclusion from facts given either by him- or herself, or testified to by another."); Fed. P. § 80:283 ("[A]n expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts.").  Instead, Mr. Martinez's opinions seek to instruct the Court on the law, which is not a proper subject of expert opinion testimony.  See Askanase v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997) (holding that even qualified lawyer experts cannot opine as to what law governs an issue or what the applicable law means because that function belongs to the court).

Mr. Martinez also concludes that "Stephen C. Porter[']s signature on the assignment is a forgery" (id. at 15), yet he professes no specialized training in handwriting analysis.  He opines about how MERS operates and who is authorized to act on its behalf, but he lists no qualifications that would give him specialized knowledge about MERS.  On the contrary, the knowledge he claims about MERS comes from websites and other public sources.  (Id. at 13–15.)  This is not the kind of scientific, technical, or specialized knowledge that is contemplated by Federal Rule of Evidence 702(a).  Instead, Mr. Martinez is merely rehashing the legal theories Plaintiffs advance in their First Amended Complaint.

Another "very significant fact to be considered" is whether an expert proposes to testify "about matters growing naturally and directly out of research [he has] conducted independent of the litigation, or whether [he has] developed [his] opinions expressly for purposes of testifying." <u>Clausen v. M/V New Carissa</u>, 339 F.3d 1049, 1056 (9th Cir. 2003).  The fact that Mr. Martinez is a retained consultant of Plaintiffs' counsel with over 70 cases from that source alone strongly suggests that Mr. Martinez's job is to testify, not to conduct independent research.

Finally, the Court is not convinced that Mr. Martinez's testimony is reliable.  For example, he opines that Stephen Porter is not authorized to represent MERS and that the Note in question was never included in the trust at issue in this action.  However, as Bank of America notes, Mr. Martinez's affidavit does not examine or explain evidence relevant to those issues that was produced in discovery.  Bank of America attached to its Motion to Strike a copy of an Agreement For Signing Authority dated May 19, 2009, which identifies Stephen Porter (among others) as a Certifying Officer of MERS.  (Doc. # 34 Ex. A.) Attached as Exhibit B is a spreadsheet excerpt that identifies Plaintiffs' loan as included in the trust at issue in this action.  (<u>Id.</u> Ex. B.)  Nowhere in his deposition does Mr. Martinez address these documents, suggesting that his methods are neither thorough nor complete.  For this reason and the others given above, the

Court concludes that Mr. Martinez's affidavit is not admissible as expert testimony and **GRANTS** Bank of America's Motion to Strike.

 B. <u>Plaintiffs' Motion to Strike and Objections to Defendant's Evidence</u>

  Plaintiffs styled their Response to Bank of America's Motion to Strike "Plaintiff's [sic] Motion to Strike Defendant's Motion to Exclude Plaintiff's Experts [sic] and in the Alternative Response." (Doc. # 35.) For the reasons given in the previous section, the Court has granted Bank of America's Motion to Strike Ezequiel Martinez's affidavit, so Plaintiffs' Motion to Strike Bank of America's Motion is accordingly denied.

  In their Response to Bank of America's Motion for Summary Judgment, Plaintiffs also objected to the declaration of Bank of America representative Alethea Espino, which Bank of America had submitted in support of its Motion for Summary Judgment. (Doc. # 22-1 ("Espino Decl.").) Ms. Espino's declaration indicates that she is Assistant Vice President, Operations Team Lead, of Bank of America's Mortgage Resolution Team. (Espino Decl. at 1.) Attached to her declaration are four exhibits: (1) a copy of Plaintiffs' promissory note (Ex. A); (2) a copy of Plaintiffs' Deed of Trust (Ex. B); (3) a copy of the January 10, 2012, assignment of the Deed of Trust (Ex. C); and (4) a copy of a letter dated August 15, 2011, which informed Plaintiffs that Bank of America was the servicer of their loan (Ex. D).

The crux of Plaintiffs' objection is that Ms. Espino "does not state any of her qualifications to testify consistent with [Rule] 702 of the Federal Rules of Evidence." (Resp. ¶ 14.)  Plaintiffs insist that Ms. Espino "is not simply testifying as a custodian of records[;] she is offering an opinion as to the procedures used by the bank, their status as [note] holder, the procedures used by the bank to initiate foreclosure, the right of the bank to initiate that process and the banks [sic] compliance with Chapter 51 of the Texas Property Code and the amount of Debt in question which is disputed." (Id.)

These objections are unfounded.  Bank of America does not offer Ms. Espino's declaration as that of an expert witness under Rule 702, and her declaration does not contain expert testimony.  She does not purport to be a document examiner and does not offer an opinion as to foreclosure procedures or as to whether Bank of America is the legal "holder."  The bulk of Ms. Espino's declaration merely describes the documents attached as exhibits—documents that Plaintiffs submitted as exhibits, too.  The facts Ms. Espino recites are facts that a Bank of America representative would naturally know, such as that the Plaintiffs have a loan that is being serviced by Bank of America; that Plaintiffs were informed about the servicer's identity; that foreclosure began; and that the debt remains unpaid in a specific amount.

Moreover, many of the objections Plaintiffs make are to elements of Ms. Espino's testimony that Plaintiffs freely admit elsewhere in their Response, such as the facts that they signed their loan papers and that they later defaulted on their loan.  Accordingly, Plaintiffs' objections to Ms. Espino's declaration are overruled and Plaintiffs' Motion to Strike (doc. 35) is **DENIED**.

II.     Motion for Summary Judgment

Defendant argues that this Court should grant summary judgment in its favor because (1) Plaintiffs have failed to tender the amount of their defaulted debt; (2) Plaintiffs have no standing to challenge the validity of the mortgage assignment and pooling agreement; (3) Plaintiffs have no claim under the Debt Collection Act because they accuse Defendant of nothing more than attempting to exercise its contractual right to foreclose; (4) Plaintiffs have no DTPA claim because they are not consumers; and (5) Plaintiffs' quiet title claim fails because they have not paid their debt and are not entitled to a release of lien.  (MSJ at 1.)

Plaintiffs respond that Defendant has not met its burden of demonstrating that this case presents no genuine issue of material fact.  (Resp. at 1.)  Bank of America's evidence, claim Plaintiffs, "fails to prove who is the holder of the note and under what authority they are acting as the servicer to act on behalf of the actual holder."  (Resp. at 8.)  For the reasons that follow, however, the Court

concludes that Plaintiffs' arguments are without merit; this case does not present any genuine issue of material fact.

A. The Nature of MERS and Its Role in This Case

Because Mortgage Electronic Registration Systems, Inc.—"MERS"—is involved in this and many other mortgage cases, the Court begins with a brief description of the nature of its business. In 1993, a number of large participants in the mortgage industry created MERS for the purpose of tracking ownership interests in residential mortgages. MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 96 (2006). More specifically, MERS was created to streamline the mortgage process by eliminating the need to record an assignment and deliver physical possession of a promissory note, which is the conventional method of assigning a note secured by a deed of trust.

MERS members—entities such as mortgage lenders and title companies—pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Id. MERS members also "contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." Id. When a MERS member first executes a mortgage, it is recorded in the County Clerk's real property records with MERS named on the instrument as nominee or mortgagee of record. While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the

16

mortgage to another MERS member, with MERS tracking these electronic transfers; but those assignments are <u>not</u> recorded in the County Clerk's real property records.  <u>Id.</u>  In this way, MERS remains the nominal mortgagee of record no matter how many times the mortgage is reassigned to another MERS member. "Through use of MERS as nominee," therefore, "lenders are relieved of the costs of recording each mortgage assignment with the County Clerk, instead paying minimal yearly membership fees to MERS."  <u>Id.</u> at 104 (Kaye, C.J., dissenting in part).

In accordance with the typical situation described in the previous section, the Deed of Trust in this case identifies MERS as the beneficiary of the deed "solely as nominee for Lender and Lender's successors and assigns."  (DOT at 2.)  By executing the Deed of Trust, Plaintiffs indicated that they "underst[ood] and agree[d] that MERS holds . . . legal title to the interests granted by [Plaintiffs] in this Security Instrument" and that MERS "has the right to exercise any or all of these interests" on behalf of the lender, "including, but not limited to, <u>the right to foreclose</u> and sell the Property . . . ."  (<u>Id.</u> at 3 (emphasis added).)  In other words, the Deed of Trust indicated that MERS could exercise the rights granted to the lender by the Deed of Trust.

B. <u>Notes, Deeds of Trust, and Bifurcation Theory</u>

Underlying all of Plaintiffs' claims is the idea that Bank of America must be the holder of the Note—not merely the beneficiary of the Deed of Trust—in order to foreclose on the subject property. Thus, before discussing the merits of Plaintiffs' various causes of action, the Court addresses this flawed legal theory, which has been roundly rejected by both federal and state courts in Texas. <u>See</u> <u>Swim v. Bank of Am., N.A.</u>, No. 3:11-CV-1240-M, 2012 WL 170758, at *3 n.25 (N.D. Tex. Jan 20, 2012) (collecting cases).

As a preliminary matter, Texas law differentiates between enforcement of a promissory note and a deed of trust. "Where there is a debt secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations." <u>Aguero v. Ramirez</u>, 70 S.W.3d 372, 374 (Tex. App. 2002). Thus, the right to recover on the promissory note and the right to foreclose <u>may be enforced separately</u>. <u>See</u> <u>Stephens v. LPP Mortgage</u>, 316 S.W.3d 742, 747 (Tex. App. 2010) (finding that the promissory note and the lien that secures it are "separate legal obligations" that "may be litigated in separate lawsuits"); <u>Carter v. Gray</u>, 125 Tex. 219, 81 S.W.2d 647, 648 (Tex. 1935) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without

foreclosing the lien, and even without a waiver of the lien.").  Foreclosure is an independent action against the collateral and may be conducted without judicial supervision.  Bierwirth v. BAC Home Loans Servicing, L.P., No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App. Aug. 30, 2012) (citing Reardean v. CitiMortgage, Inc., No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011)).  Enforcement of the promissory note, on the other hand, is a personal action against the signatory and requires a judicial proceeding.  Id.

Chapter 51 of the Texas Property Code, which governs non-judicial foreclosures, authorizes either a mortgagee or a mortgage servicer acting on behalf of a mortgagee to sell real property under a "power of sale conferred by a deed of trust."  See Tex. Prop. Code. §§ 51.002, 51.0025.  The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system,[3] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  Tex. Prop. Code § 51.0001(4).  Notably absent from the statute is any reference to the promissory note.

---

[3]  A "book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns."  Tex. Prop. Code § 51.0001(1).

The Deed of Trust identified MERS as "the <u>beneficiary</u> of this Security Instrument" and nominee for lender Countrywide.  (DOT at 2 (emphasis added).)  Quite clearly, then, MERS was a "mortgagee" as defined in the Property Code.  <u>See</u> Tex. Prop. Code § 51.0001(4)(A) (defining a "beneficiary . . . of a security instrument" as a mortgagee).  And because MERS was a mortgagee, it was entitled to foreclose on the subject property on behalf of Countrywide.  <u>See</u> <u>id.</u> §§ 51.002, 51.0025.  Moreover, the Deed of Trust itself expressly granted MERS authority "to foreclose and sell the Property" (DOT at 3), and Texas courts have held that provisions granting MERS the authority to foreclose are enforceable to the extent they are set forth in the deed of trust.  <u>See</u> <u>Bierwirth</u>, 2012 WL 3793190, at *4; <u>Athey v. Mortg. Elec. Registration Serv.</u>, L.P., 314 S.W.3d 161, 166 (Tex. App. 2010).  Accordingly, if MERS validly assigned its interest to another party (in this case, BNY, for which Bank of America is acting as mortgage servicer), that assignee now has the same right to foreclose on the subject property that MERS had.  <u>See</u> <u>Crowell v. Bexar County</u>, 351 S.W.3d 114, 118 (Tex. App. 2011) (holding that "[a]bsent a clause limiting assignment, the deed was assignable" where it expressly provided "that all rights under the deed inure[d] to 'the respective successors and assigns of Lender and Grantor . . . .'").

Under Texas law, therefore, Bank of America need not hold the Note in order to foreclose; it need only have the right to foreclose under the Deed of

Trust.  However, this is a moot point, because Bank of America is authorized to act on behalf of an entity that <u>does</u> hold both the Note and the Deed of Trust: The Bank of New York Mellon (BNY).

    C.  <u>There Is No Genuine Dispute that The Bank of New York Mellon Is Both Holder of the Note and Assignee of the Deed of Trust</u>

        1.  <u>Standing</u>

Bank of America asserts that the Court need not waste time addressing Plaintiffs' challenges to the assignments of the Note and Deed of Trust because "Plaintiffs have absolutely no standing to complain about the nature and effect of instruments to which they are not parties."  (MSJ ¶ 9.)  "It is elementary contract law," asserts Bank of America, "that a person may not enforce a contract to which [it] is not a party."  (MSJ ¶ 12.)

Bank of America is correct that many courts within this circuit have held that a plaintiff-mortgagor does not have standing to challenge allegedly invalid assignments to which it was not a party.  See <u>Metcalf v. Deutsche Bank Nat'l Trust Co.</u>, Cv. No. 3:11–CV–3014–D, 2012 WL 2399369, at *5 (N.D. Tex. June 26, 2012); <u>DeFranceschi v. Wells Fargo Bank, N.A.</u>, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011) ("Plaintiffs do not have standing to challenge the assignments because they were not a party to those assignments.") (quoting <u>Eskridge v. Fed. Home Loan Mortg. Corp.</u>, No. W–10–CA–285, 2011 WL

2163989, at *5 (W.D. Tex. Feb. 24, 2011)); Schieroni v. Deutsche Bank Nat'l

Trust Co., No. H–10–663, 2011 WL 3652194, at *6 (S.D. Tex. Aug. 18, 2011).

Other courts have held that the plaintiff may have standing, depending on the

nature of the challenges asserted.  See Routh v. Bank of Am., N.A., No. SA–12–

CV–244–XR, 2013 WL 427393, at *9 (W.D. Tex. Feb.4, 2013); Puente v.

CitiMortgage, Inc., No. 3:11–CV–2509, 2012 WL 4335997, at *6 (N.D. Tex. Aug.

29, 2012) ("However, a careful review of Texas law persuades the Court that it is

not completely accurate to say that one can never challenge assignment to which

one is not a party.") (internal quotation marks omitted) (quoting Kramer v. Fed.

Nat'l Mortg. Ass'n, No. A–12–CA–276–SS, 2012 WL 3027990, at *4 (W.D. Tex.

May 15, 2012)); Miller v. Homecomings Fin., LLC, 881 F. Supp. 2d 825 (S.D.

Tex. 2012).  The courts in the latter category—including this Court, see, e.g.,

Howard v. J.P. Morgan Chase N. Am., Cv. No. SA–12–CV–00440–DAE, 2013

WL 1694659, at *5 (W.D. Tex. Apr. 18, 2013)—rely on Texas law for the

proposition that a plaintiff-mortgagor may have standing to challenge the validity

of an assignment.

        The primary exception to the general rule against standing is where an

assignee of a claim sues the obligor for performance.  Under those circumstances,

> [t]he law is settled that the obligors of a claim may defend the suit brought
> thereon on any ground which renders the assignment void, but may not
> defend on any ground which renders the assignment voidable only, because

the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

Tri–Cities Constr., Inc. v. Am. Nat'l Ins. Co., 523 S.W.2d 426, 430 (Tex. Civ.

App. 1975) (emphasis added) (citing Glass v. Carpenter, 330 S.W.2d 530, 537

(Tex. Civ. App. 1959)).

      This rule accords with long-established principles of contract law.  A

void contract is "invalid or unlawful from its inception" and therefore cannot be

enforced.  17A C.J.S. Contracts § 169.  Thus, a mortgagor who was not a party to

an assignment between mortgagees may nevertheless challenge the enforcement of

a void assignment.  A voidable contract, on the other hand, "is one where one or

more of the parties have the power, by the manifestation of an election to do so, to

avoid the legal relations created by the contract."  Id.  Accordingly, only one who

was a party to a voidable contract has standing to challenge it.

      For the reasons that follow, the Court concludes that Plaintiffs do not

have standing to challenge the transfer of the Note to BNY and that there is no

genuine dispute that BNY is also the assignee of the Deed of Trust.

2.  <u>Plaintiffs Do Not Have Standing to Challenge the Transfer of the Note to the Trust</u>

As explained above, Bank of America produced the original Note at the hearing.[4]  The Note is indorsed in blank.  (<u>See</u> Espino Decl. Ex. A.)  Under Texas law, physical possession of a promissory note that bears a blank indorsement establishes ownership and the right to collect.  <u>See</u> Tex. Bus. & Com. Code § 3.205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").  While Bank of America produced the indorsed-in-blank Note, it did so on behalf of BNY, establishing BNY's ownership.  <u>See</u> <u>Kiggundu v. Mortgage Elec. Registration Sys. Inc.</u>, 469 F. App'x 330, 331 (5th Cir. 2012) ("Because the note was endorsed in blank and the Bank of New York was in possession of the note, under Texas law, the Bank of New York was entitled to collect on it.") (citing Tex. Bus. & Com. Code §§ 1.201(b)(21), 3.204, 3.205).

Plaintiffs conceded in their Response that "[The] Bank of New York[,] not Bank of America[,] is the holder of the note" (Resp. ¶ 10) and argued that Bank of America could not foreclose because "Bank of America, at this time, cannot prove that it is the holder or owner of the note . . . ." (<u>id.</u> ¶ 11).  It is true but

_____

[4] Bank of America also submitted a copy of the Note as Exhibit A to Alethea Espino's Declaration.

irrelevant that Bank of America is not holder of the Note; as explained, BNY holds the Note, and Bank of America services the loan on BNY's behalf.

At the hearing, however, Plaintiffs' argument changed. Rather than arguing that Bank of America could not prove that it was the holder of the Note (which, as the servicer, it need not be), Plaintiffs argued that BNY—while physically in possession of the Note—was not truly the Note's holder because it had received the Note via a void transaction. Specifically, Plaintiffs argued that the assignment of the Note to BNY as Trustee for Certificateholders of the CWABS, Inc., Asset-backed Certificates, Series 2006-22 (hereinafter "the Trust") was "void" because it violated the terms of the Trust's Pooling and Servicing Agreement ("PSA").[5] Plaintiffs insisted that, according to the PSA, the Trust closed "six months [after] November 30, 2006" (Resp. ¶ 11).[6] Furthermore,

---

[5]   A PSA is one of a number of "complex, interrelated contracts" typically executed when a mortgage-securitization trust is formed. Chase Manhattan Mortg. Corp. v. Advanta Corp., No. Civ. A. 01–507 KAJ, 2005 WL 2234608, at *1 (D. Del. Sept. 8, 2005). In a mortgage securitization, mortgage loans are acquired, pooled together, and then sold into a trust. Id. Investors can purchase an interest in the trust, and that money is used to raise funds for new mortgages. BlackRock Financial Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp., 673 F.3d 169, 173 (2d Cir. 2012). "The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a [PSA]." Id.

[6]   Plaintiffs made a similar argument in their briefing but insisted that the alleged violation of the PSA meant that Bank of America was not the holder of the Note. (See Resp. ¶ 11.)

insisted Plaintiffs, transfers taking place after the closing date are void under New York law. (Id.)

Plaintiffs' argument is without merit.  Even assuming, as Plaintiffs insist, that New York law governs interpretation of the PSA,[7] and assuming that the transfer of Plaintiffs' loan to the Trust violated the terms of the PSA, that after-the-deadline transaction would merely be <u>voidable</u> at the election of one or more of the parties—not void.  Accordingly, Plaintiffs, who were not parties to the PSA, do not have standing to challenge it.

It is true that New York Estate Powers & Trusts Law § 7–2.4 states that "every act in contravention of the Trust is void."  New York case law, however, makes clear "that section 7–2.4 is not applied literally in New York." <u>Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC</u>, 366 Ill. Dec. 936, 981 N.E.2d 1 (Ill. App. Ct. 2012).  Instead, New York courts have held that a beneficiary can ratify a trustee's ultra vires act.  <u>See, e.g.</u>, <u>Mooney v. Madden</u>, 597 N.Y.S.2d 775 (N.Y. App. 1993) (holding that trustee may bind trust to an otherwise invalid act or agreement that is outside scope of trustee's power when beneficiary or beneficiaries consent or ratify trustee's ultra vires act or agreement); <u>Matter of Estate of Janes</u>, 630 N.Y.S.2d 472, 477 (Sur. 1995), <u>aff'd as modified sub nom.</u>

---

[7] The parties have not provided the Court with a complete copy of the PSA. According to the Table of Contents, Section 10.03 describes the "Governing Law"; however, the Court does not have access to the contents of Section 10.03.

Matter of Janes, 643 N.Y.S.2d 972 (N.Y. App. Div. 1996), aff'd sub nom. Matter of Estate of Janes, 90 N.Y.2d 41 (N.Y. 1997) (acknowledging that a beneficiary may ratify a trustee's ultra vires act if "the ratification was done with knowledge of material facts"); Leasing Serv. Corp. v. Vita Italian Restaurant, 566 N.Y.S.2d 796, 797–98 (N.Y. App. Div. 1991) ("It is hornbook law that a contract entered into by . . . an unauthorized agent, corporate officer, trustee or other person purporting to act in a representative capacity . . . is voidable."); Hine v. Huntington, 103 N.Y.S. 535, 540 (1907) ("We have before this called attention to the fact that the cestui que trust is at perfect liberty to elect to approve an unauthorized investment and enjoy its profits, or to reject it at his option."); 106 N.Y. Jur. 2d Trusts § 431 ("[T]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's ultra vires act or agreement."); see also In re Levy, 893 N.Y.S.2d 142, 144 (N.Y. App. Div. 2010) (explaining that "[t]he essence of ratification 'is that the beneficiary unequivocally declares that he does not regard the act in question as a breach of trust but rather elects to treat it as a lawful transaction under the trust'") (quoting Bogert, Law of Trusts and Trustees § 942).

　　　　If an act may be ratified, it is voidable rather than void.  See Hacket v. Hackett, 950 N.Y.S.2d 608, 2012 WL 669525, at *20 (N.Y. Sup. Ct. Feb. 21, 2012)  ("A void contract cannot be ratified; it binds no one and is a nullity.

However, an agreement that is merely voidable by one party leaves both parties at liberty to ratify the transaction and insist upon its performance.") (quoting 27 Williston on Contracts § 70:13 [4th ed.]) (internal quotation marks omitted); 17 C.J.S. Contracts § 4 (noting that "a <u>void</u> contract . . . is no contract whatsoever" and "cannot be validated by ratification") (emphasis added); <u>id.</u> ("A contract that is merely voidable is capable of being confirmed or ratified by the party having the right to avoid it . . . .").

These cases make clear that, under New York law, a trustee's unauthorized transactions may be ratified; such transactions are, accordingly, <u>voidable</u>—not void.  The Court recognizes that "there is a tension between these cases and the apparently plain language of section 7–2.4."  <u>Bank of Am. Nat'l Ass'n</u>, 981 N.E.2d at 9.  "[H]owever, such matters are for New York courts to reconcile, not this one."  <u>Id.</u>  "That this line of cases exists . . . is enough for [this Court] to conclude that such acts are merely voidable."  <u>Id.</u>  Accordingly, even if it is true that the Note was transferred to the Trust in violation of the PSA, that transaction could be ratified by the beneficiaries of the Trust and is merely voidable.

For the reasons already given, Plaintiffs do not have standing to challenge an assignment to which they were not a party unless that assignment was void.  Because the transfer of the Note, if indeed it violated the PSA, would merely

be voidable, Plaintiffs do not have standing to challenge it. Accordingly, the fact that BNY has produced the indorsed-in-blank Note controls; it is the holder of the Note.

### 3. The Mortgage Follows the Note

"[U]nder Texas law, the mortgage follows the note." Kiggundu, 469 F. App'x 330, 332 (5th Cir. 2012) (citing Lawson v. Gibbs, 591 S.W.2d 292, 294 (Tex. App. 1979)); United States v. Vahlco Corp., 720 F.2d 885, 891 (5th Cir. 1983)); see also Tex. Bus. & Com. Code § 9.203(g); id. cmt. 9 ("Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien."). As the Fifth Circuit recently explained in similar circumstances:

> Because the note was endorsed in blank and the Bank of New York was in possession of the note, under Texas law, the Bank of New York was entitled to collect on it. [Citation omitted.] Moreover, under Texas law, the mortgage follows the note. [Citations omitted.] Thus, the Bank of New York was authorized to foreclose on the property when [Plaintiff] defaulted. Though [Plaintiff] attacks the validity of the assignment of the mortgage document—the deed of trust—to the Bank of New York, this argument is beside the point. It was sufficient for the Bank of New York to establish that it was in possession of the note; it was not required to show that the deed of trust had been assigned to it.

Kiggundu, 469 F. App'x at 332–33; see also Gilbreath v. White, 903 S.W.2d 851, 854 (Tex. App. 1995) ("An assignment of the deed of trust is not in evidence, but the collateral follows the promissory note obligation."). Accordingly, because

Bank of America has shown (1) that BNY holds the Note and (2) that Bank of America is BNY's mortgage servicer, it need not show that it or BNY was also assigned the Deed of Trust in order to foreclose; the Note is sufficient.[8]

    D.  <u>Bank of America, as BNY's Mortgage Servicer, May Foreclose on the Subject Property on BNY's Behalf</u>

Section 51.0025 of the Texas Property Code provides that "[a] mortgage servicer may administer the foreclosure of property . . . on behalf of a mortgagee if the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage."  Bank of America has presented evidence that it (as successor by merger to BAC Home Loans Servicing, LP) is the mortgage servicer for BNY (<u>see</u> Espino Decl. ¶ 7; <u>id.</u> Ex. D), and Plaintiffs' evidence has supported rather than contradicted that assertion.  Ms. Calderon acknowledged in her affidavit that

---

[8] Even if the Deed of Trust did not automatically "follow" the Note, however, there can be no genuine dispute that BNY was also assigned the Deed of Trust.  As described above, the Deed of Trust in this case identified MERS as "the beneficiary of this Security Instrument" and nominee for lender Countrywide (DOT at 2), making MERS a mortgagee entitled to foreclose on the subject property.  <u>See</u> Tex. Prop. Code §§ 51.0001(4)(A), 51.002, 51.0025.  The parties submitted copies of two notarized assignments—the first recorded in the Bexar County records (<u>see</u> Resp. ¶ 12 (citing Ex. D))—and the second recorded in the MERS system (MSJ Ex. A at 1).  The first assignment transfers "all beneficial interest under [the] Deed of Trust" from MERS to The Bank of New York Mellon "as Trustee for the Certificateholders of the CWABS, Inc., Asset-backed Certificates, Series 2006-22, c/o Bank of America, N.A."  (<u>Id.</u>)  The second is identical; it merely corrects a scrivener's error.

"BAC" was "the servicer" for her mortgage.  (Calderon Decl. at 2 (emphasis added).)  She also acknowledged that "[i]n July 2011 [she] received a letter stating that the servicing of [her] loan was being transferred from BAC to [its parent company] Bank of America."  (Id.; see also id. Ex. 2 (indicating that BAC was acting as mortgage servicer for The Bank of New York).)  Finally, Plaintiffs applied to Bank of America for a number of loan modifications due to changes in their income, further evidencing their understanding that Bank of America was servicing their loan.  (See Calderon Decl.; id. Ex. 1 (correspondence with Bank of America dated June 17, 2010).)

The Court concludes that there is no genuine dispute as to whether Bank of America is, pursuant to a servicing agreement with BNY, the mortgage servicer for Plaintiffs' loan.  Accordingly, Bank of America may foreclose on Plaintiffs' property on BNY's behalf.  See Tex. Prop. Code. § 51.0025.

E.  Plaintiffs' Remaining Causes of Action

In their Response, Plaintiffs indicated that they wished to pursue only their "Declaratory Judgment Claims, UCC Claims, Quiet Title Claims, Injunctive Relief and Legal Fees Claims . . . ." (Resp. ¶ 35.)  For the reasons below, each of these claims fails.

1.  Declaratory Judgment

Plaintiffs request that the Court determine the following issues:

1) Is the transfer of the lien the subject of this suit to Defendant void by reason of violation of the Pooling and Servicing Agreement the subject of this suit[?]
2) Is the deed of trust and note void due to fraudulent assignment by the Defendant[?]
3) Does the Defendant Bank have standing to foreclose[?]
4) Is the bank the holder and owner of the notes the subject of this suit[?]

(Compl. ¶ 15.)  To be entitled to declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, a plaintiff must allege facts demonstrating that there exists "a substantial and continuing controversy between the two adverse parties."  Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003).  The Act does not does not create substantive rights; it is merely a procedural device that enhances the remedies available to plaintiffs in federal court.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950); Appling County v. Municipal Elec. Auth. of Georgia, 621 F.2d 1301, 1303 (5th Cir. 1980).

As described in detail above, there is not a "substantial and continuing controversy" regarding these issues.  Bank of America has established (1) that BNY is the holder of the Note and the assignee of the Deed of Trust and (2) that it, Bank of America, is the mortgage servicer for Plaintiffs' mortgage.  In the absence of a controversy, Plaintiffs' request for a declaratory judgment must be denied.  Accordingly, the Court grants Bank of America summary judgment on this claim.

32

2.  <u>UCC Claims</u>

Plaintiffs also bring a claim for "UCC violations," or violations of the Texas Uniform Commercial Code, which is codified by the Texas Legislature in the Texas Business and Commerce Code.  More specifically, Plaintiffs argue, citing § 3.203, that "Defendant Bank has no right to enforce the instrument due to the fraud and illegal acts of transferring the note and the deed of trust after the closing of the PSA and by reason of the fraudulent assignment of the security instrument."  (Compl. ¶ 16.)  They also cite to §§ 3.301 and 3.309, arguing that "Defendant Bank is not the holder or owner of the note and security instrument and cannot establish the chain of title to this transaction such that Defendant can prove that Defendant bank has the right to foreclose."  (<u>Id.</u> ¶ 17.)

Section 3.203 of the Texas Business and Commerce Code states that a "transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."  Because, as explained above, Plaintiffs have not presented sufficient evidence to create a genuine dispute regarding whether BNY engaged in fraud or illegality concerning the transfer of the Note, the Court grants Bank of America summary judgment on this claim.

Section 3.301 of the Texas Business and Commerce Code defines a "[p]erson entitled to enforce" an instrument as one who is "(i) the holder of the

33

instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)."  Tex. Bus. & Com. Code § 3.301.  First, § 3.301 does not appear to provide an independent cause of action.  Even if § 3.301 does provide a cause of action, however, Plaintiffs have not presented sufficient evidence to raise a genuine dispute regarding the validity of the transfer of the Note to BNY.

Finally, Section 3.309 applies to the enforcement of a "lost" instrument.  There is no indication that the Note in this case is lost; it was produced at the hearing.  Accordingly, the Court grants Bank of America summary judgment on all of Plaintiffs' "UCC Claims."

3. <u>Quiet Title</u>

A suit to quiet title is an equitable action in which the plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim.  <u>Jones v. Cont'l Royalty Co.</u>, 115 F.2d 731, 731–32 (5th Cir. 1940); <u>Florey v. Estate of McConnell</u>, 212 S.W.3d 439, 448 (Tex. App. 2006).  A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof.  <u>Wright v. Matthews</u>, 26 S.W.3d 575, 578 (Tex. App. 2000).  "In a suit to remove a cloud from his title, the

34

plaintiff has the burden of supplying the proof necessary to establish his superior

equity and right to relief."  <u>Hahn v. Love</u>, 321 S.W.3d 517, 531 (Tex. App. 2009).

   To succeed on a quiet title claim, a plaintiff must show: (1) an interest

in a specific property; (2) title to the property is affected by a claim by the

defendant; and (3) the claim, although facially valid, is invalid or unenforceable.

<u>U.S. Nat'l Bank Ass'n v. Johnson</u>, No. 01-10-00837-CV, 2011 WL 6938507, at *3

(Tex. App. Dec. 30, 2011) (citing <u>Sadler v. Duvall</u>, 815 S.W.2d 285, 293 n. 2 (Tex.

App. 1991).

   Again, for the reasons given, Plaintiffs have not presented sufficient

evidence to create a genuine issue of fact concerning the validity of Bank of

America's claim against the subject property.  Accordingly, the Court grants Bank

of America summary judgment on this claim.

   4. <u>Injunctive Relief</u>

   To obtain injunctive relief, a plaintiff must demonstrate:

> (1) a substantial likelihood of success on the merits of the movant's claims;
> (2) a substantial threat that movant will suffer irreparable injury if the
> injunction is not granted; (3) the threatened injury to the movant outweighs
> any harm that the other party might suffer if the injunction is entered; and
> (4) an injunction will not disserve the public interest.

<u>Anderson v. Jackson</u>, 556 F.3d 351, 360 (5th Cir.2009) (citing <u>Canal Auth. v.</u>

<u>Callaway</u>, 489 F.2d 567, 572 (5th Cir. 1974)).  Injunctive relief is "an

extraordinary and drastic remedy"; it should only be granted when the movant has

clearly carried the burden of persuasion.  Anderson v. Jackson, 556 F.3d 351, 360

(5th Cir. 2009) (citing Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992,

997 (5th Cir.1985)).

For the reasons given many times in this Order, Plaintiffs' claims all

fail.  Injunctive relief is, accordingly, inappropriate.

5.  Attorneys' Fees

Plaintiffs assert that "under the DCPA and DCPA [sic] attorney s [sic]

fees may be assessed against Defendant."  (Compl. ¶ 34.)  However, in their

Response, Plaintiffs indicated that they wished to pursue only their "Declaratory

Judgment Claims, UCC Claims, Quiet Title Claims, Injunctive Relief and Legal

Fees Claims."  (Resp. ¶ 35.)  Because Plaintiffs do not bring a claim under the

DCPA, and because the Court has granted summary judgment in favor of Bank of

America on Plaintiffs' remaining claims, Plaintiffs are not entitled to attorneys'

fees.

<u>CONCLUSION</u>

For the reasons given, the Court hereby **GRANTS** Bank of America's Motion to Strike (doc. # 34), **DENIES** Plaintiffs' Motion to Strike Defendant's Motion to Exclude Plaintiffs' Expert Witness (doc. # 35), and **GRANTS** Bank of America's Motion for Summary Judgment (doc. # 22).

**IT IS SO ORDERED**.

**DATED**:  San Antonio, Texas, April 23, 2013.

_____
David Alan Ezra
Senior United States District Judge